IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 JUN -3 P 3: 17

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| BECTON, DICKINSON AND COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>THERASENSE INC.,<br><br>Defendant. | CIVIL ACTION NO. 04-10574 (JLT) |

**DEFENDANT THERASENSE'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS, STAY OR TRANSFER ACTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1), 28 U.S.C. § 2201(a) AND 28 U.S.C. § 1404(a)**

Pursuant to Federal Rule of Civil Procedure 12(b)(1), 28 U.S.C. § 2201(a) and 28 U.S.C. § 1404(a), Defendant TheraSense moves to dismiss the present action, or, in the alternative, stay or transfer it to the Northern District of California.

This case arises from the following all-too-common scenario: The owner of a patent notifies a party of its belief that its product infringes the claims of the patent, and invites the party to obtain a license to use its technology. The parties thereupon enter into good faith negotiations over the terms of a license. While the negotiations are ongoing, however, the accused infringer files a preemptive suit for a declaration of non-infringement and invalidity of the patent in order to deprive the patent owner of its own choice of forum in the event the negotiations fail.

As both this Court and the Federal Circuit have recognized, such preemptive lawsuits by licensees contravene public policy by frustrating attempts to resolve disputes through extrajudicial means and depriving a patentee of its chosen forum. Accordingly, the Court properly should either find that subject matter jurisdiction is lacking over the present action or

decline to exercise such jurisdiction in deference to TheraSense's recently-filed action in its home forum of the Northern District of California.

## I.   FACTUAL BACKGROUND

TheraSense develops, manufactures, and markets the FreeStyle® blood glucose self-monitoring system, and is a leader in developing systems that feature very small sample size, rapid test results, and less painful testing for people with diabetes. Declaration of Carl Silverman ("Silverman Decl."), ¶ 2. Becton, Dickinson and Company ("BD") is a medical technology company that sells a broad range of medical supplies, devices, laboratory equipment, and diagnostic products. BD presently sells the BD Logic Blood Glucose Monitor ("Logic"), and, prior to the beginning of this year, sold the BD Latitude Diabetes Management System ("Latitude"), two products that compete or competed directly with TheraSense's small sample size blood monitors. *Id.*, ¶ 3.

On April 8, 2003, TheraSense's Vice President of Intellectual Property, Patrick Bengtsson, sent a letter to Edward Ludwig, Chairman and CEO of BD, informing him of TheraSense's belief that BD's Logic and Latitude products infringed one or more claims of United States Patent No. 6,143,164 ("the '164 patent"), assigned to TheraSense. Silverman Decl., ¶ 5. BD replied by letter dated April 16, 2003. In that letter, BD (i) agreed to discuss the matter further with TheraSense; (ii) requested time to review the patent, associated materials, and BD's accused products; and (iii) asked that TheraSense identify the particular patent claims at issue. *Id.*, ¶ 6. On April 23, 2004, TheraSense responded to this request, and identified four claims of the '164 patent as being particularly pertinent. *Id.*, ¶ 7. After more than two months passed, William F. Lee of Hale and Dorr wrote to Mr. Bengtsson on June 4, 2003, stating that his firm would be representing BD in connection with the issues raised in TheraSense's letters, and promising to respond once Hale and Dorr had completed its review. *Id.*, ¶ 8.

Later that month, TheraSense informed BD that it had obtained allowance of additional claims that it considered to cover BD's assay products. *Id.*, ¶ 9. On July 15, 2003, the United States Patent & Trademark Office ("PTO") issued U.S Patent No. 6,592,745 ("the '745 patent"),

which contained some of these new claims. Exh. B to BD Complaint. On July 15, 2003, Mr. Bengtson notified BD's Alan Fiedler, an in-house BD attorney, of the issuance of the '745 patent, and informed him of TheraSense's belief that the methods described in the patent "are currently being used when Logic strips are used."[1] *Id.*, ¶ 10.

Mr. Fiedler responded by requesting information about the terms of a possible license for TheraSense's technology. *Id.* On July 31, 2003, TheraSense provided BD with the terms of a license proposal.

[Redacted]

TheraSense requested a response to this proposal by August 15, 2003. *Id.*, ¶ 11.

On August 4, 2003, Mr. Lee responded to Mr. Bengtsson's letter, informing him that BD was still investigating TheraSense's claims, and would respond shortly thereafter, although not by the August 15, 2003 deadline indicated in Mr. Bengtsson's e-mail. *Id.*, ¶ 12. Over the next several months, BD repeatedly postponed its response to TheraSense's licensing proposal, while TheraSense continued to request a prompt response and to remind BD that its continued infringing sales were causing damage to TheraSense. *See id.*, ¶ 13, and exhibits referenced therein.

On October 31, 2003, Mr. Bengtsson informed Wayne Kennard at Hale & Dorr that TheraSense would withdraw its license offer if it were not accepted by November 20, 2003, while inviting Mr. Kennard to respond promptly so that the parties could try to reach an agreement before that date. *Id.*, ¶ 14. Mr. Bengtsson stated that, if the parties were unable to

---

[1] Although Mr. Bengtsson left his position as Vice President of Intellectual Property of TheraSense in July 2003, he remained a consultant to Therasense, and, in that role, continued to serve as the primary contact with BD through year-end.

reach agreement by November 20, TheraSense would "continue to offer a license to BD," but would do so on different terms than its original proposal. *Id.* & Exh. N thereto.

On November 19, 2003, one day before the deadline set forth in Mr. Bengtsson's letter, Mr. Kennard wrote to propose that the parties meet in December to discuss the feasibility of a proposal different from the [Redacted] licensing proposals previously offered by TheraSense, [Redacted]

[Redacted]    *Id.*, ¶ 15 & Exh. O thereto. Mr. Bengtsson responded by reminding Mr. Kennard that TheraSense's earlier [Redacted] licensing proposal would "come off the table" the following day unless BD agreed to its terms. *Id.*, ¶ 16. He further indicated that TheraSense would be willing to discuss a [Redacted] agreement with BD in December, *after* BD had executed the [Redacted] licensing agreement earlier proposed by TheraSense. *Id.* & Exh. P thereto.

BD did not accept TheraSense's [Redacted] licensing proposal by the November 20, 2003 deadline. On December 3, 2003, Bill Marshall, BD's President of Diabetes Care, and TheraSense's CEO, Mark Lortz, discussed various options for a business relationship between the two companies. Thereafter, Wayne Kennard wrote to Mr. Bengtsson, confirming that, pursuant to Mr. Marshall's and Mr. Lortz's discussion, the companies had agreed to a meeting of business and legal representatives in California on December 19, 2003. *Id.*, ¶ 17. Mr. Kennard indicated that the purpose of the meeting would be to negotiate and execute a memorandum of understanding ("MOU") with regard to BD's licensing of TheraSense's technology.

[Redacted]

The parties met at TheraSense's offices on December 19, 2003, and discussed the possible terms of a licensing relationship. *Id.*, ¶ 18. On December 23, 2003, TheraSense

prepared a draft MOU containing the terms of a [Redacted] licensing agreement and forwarded it to BD for review. *Id.*

After more than a month had passed, BD's William Marshall wrote to TheraSense on February 3, 2004, indicating that BD now wished to accept the (now-expired) Option 2 [Redacted] option from TheraSense's original proposal [Redacted]

*Id.*, ¶ 19. In early March, 2004, Carl Silverman assumed the position of Vice President of Intellectual Property formerly been held by Mr. Bengtsson, as well as primary responsibilities for the parties' licensing discussions. *Id.*, ¶ 20. On March 10, 2004, Mr. Silverman wrote to Mr. Marshall to inform him that TheraSense was not willing to offer a license on the now-expired terms set forth in Option 2 of its earlier [Redacted] licensing proposal, but would still be willing to consider a license based upon the terms of Option 1. *Id.*, ¶ 21 & Exh. T. On March 18, 2004, Mr. Kennard replied, stating that BD deemed Option 2 available to it notwithstanding the passage of the November 20 deadline, believed it was entitled to accept that option, and asked TheraSense to confirm that it would agree to a license on those terms. *Id.*, ¶ 22.

On March 23, 2004, Mr. Kennard called Mr. Silverman to ask about TheraSense's response to his most recent letter. Mr. Silverman told Mr. Kennard that TheraSense was still evaluating BD's proposal, and would provide its response shortly. *Id.*, ¶ 23. Mr. Silverman also confirmed with Mr. Kennard that BD remained interested in resolving the parties' dispute amicably through a license arrangement. *Id.* Nonetheless, that same day, BD filed the present lawsuit. *Id.*, ¶ 24.

The next day, unaware that this suit had been filed, Mr. Silverman provided a written response to Mr. Kennard's March 18 letter, indicating that TheraSense disagreed with his position that Option 2 from the earlier proposal remained open, and suggesting that Mr. Kennard instead focus on providing a specific response to the terms of TheraSense's most recent counterproposal. Mr. Silverman also asked Mr. Kennard to advise him if BD was "no longer interested in a license." *Id.*, ¶ 25.

The following week, BD orally notified TheraSense that it had filed the present lawsuit, and BD served its complaint upon TheraSense on April 1, 2004. *Id.*, ¶ 26. The complaint alleges the existence of an actual, immediate and justiciable controversy between BD and TheraSense as to the infringement and validity of the TheraSense patents. Complaint, ¶ 11. Specifically, the complaint refers to TheraSense's April 8, 2003 letter accusing BD of infringement of the '164 patent, and its subsequent assertion that BD's products practice the invention claimed in the '745 patent, *Id.*, ¶¶ 8-9, and alleges that BD does not believe that its products infringe the '164 or '745 patents, or that those patents are valid *Id.*, ¶ 10. BD further alleges that "the parties have engaged in discussions in an attempt to resolve their dispute," but that "the discussions between the parties have terminated." *Id.*, ¶ 10.

On May 28, 2004, TheraSense filed an action for patent infringement of the '164 and '745 patents in the Northern District of California. See Exh. C to Decl. of Ted G. Dane ("Dane Decl."). The present motion is intended to avoid the possibility of duplicative litigation, and to preclude BD from preempting TheraSense's choice of forum for its patent infringement suit through its precipitous filing of a declaratory relief action in the midst of the parties' licensing negotiations.

## II.   ARGUMENT

The present case falls into a familiar pattern: a party invited by a patentee to participate in licensing negotiations files a declaratory relief suit while the negotiations are ongoing in order to secure for itself a favorable forum should the negotiations fail. As noted below, both this Court and the Federal Circuit have recognized that, under such circumstances, the Court should either find that jurisdiction does not exist over this matter or decline to exercise jurisdiction, and instead allow the patentee to litigate its infringement claims in its chosen forum.

### A.   BD Did Not Face A Reasonable Apprehension Of Suit At The Time It Filed This Action.

As the Federal Circuit has observed, "[w]hen there are proposed or ongoing license negotiations, a litigation controversy normally does not arise *until the negotiations have broken*

down." *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1053 (Fed. Cir 1995) (emphasis added); *Waters Corp. v. Hewlett-Packard Co.*, 999 F. Supp. 167, 173 (D. Mass. 1998) (holding that plaintiff who filed declaratory relief suit when invited to participate in licensing discussions did not have "reasonable apprehension of suit" sufficient to create subject matter jurisdiction over declaratory relief claim).

Here, BD filed suit in the middle of ongoing licensing discussions. Just five days before BD filed this action, it sent a letter to TheraSense's Carl Silverman stating that it intended to accept one of TheraSense's earlier **[Redacted]** licensing proposals. And on the day after this action was filed, Mr. Silverman wrote to BD soliciting a further response to his last licensing term sheet

> Although the requirement that the declaratory plaintiff be under a reasonable apprehension of suit does not require that the patentee be known to be poised on the courthouse steps, a patentee's attempt to conduct license negotiations is a commercial activity. [Such] activity [is] not a threat of suit, and d[oes] not create a justiciable controversy.

*Phillips Plastic*, 57 F.3d at 1054. Here too, BD was under no reasonable apprehension of suit at the time it filed the present action, and thus the present action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. *Id.* at 1053 (affirming dismissal of action where declaratory relief plaintiff did not advise patentee that it no longer wished to continue license negotiations, and "filed suit instead of responding to [the patentee's] request" for information) (emphasis added).[2]

---

[2] That a controversy *now* exists as a result of BD's abandonment of the parties' licensing discussions cannot serve to "cure" the absence of such a controversy at the time it filed suit. *See GAF Bldg Materials Corp. v. Elk Corp.*, 90 F.3d 479, 483 (Fed. Cir. 1996) ("Later events may not create jurisdiction where none existed at the time of filing") (quoting *Spectronics Corp. v. H. B. Fuller Co.*, 940 F.2d 631, 635 (Fed. Cir. 1991)); *Int'l Med. Prosthetics Research Assocs., Inc v. Gore Enter. Holdings, Inc.*, 787 F.2d 572, 575 (Fed. Cir. 1986) (declaratory judgment plaintiff must "establish that jurisdiction over its declaratory judgment action existed at, and has continued since, the time the complaint was filed.") (emphasis added).

B.  **The Facts Of The Present Case Justify Dismissal Of BD's Declaratory Relief Claims.**

Even if the Court were to conclude that a justiciable controversy existed between TheraSense and BD at the time BD filed suit, the present action should still be dismissed as an improper attempt by BD to preempt TheraSense's chosen choice of forum.

A district court has considerable discretion as to whether or not to exercise declaratory relief jurisdiction under section 2201(a) of the Declaratory Judgment Act.

> Simply because there is an actual controversy between the parties does not mean that the district court is required to exercise that jurisdiction. The Act states that a court *may* grant declaratory relief. The Supreme Court [has] reaffirmed that the Declaratory Judgment Act thereby accords district courts a "unique breadth of . . . discretion to decline to enter a declaratory judgment." *Wilton v. Seven Falls Co.*, 515 U.S. 277[, 287 (1995)].

*EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813 (Fed. Cir. 1996) (emphasis in original).

Although there is a general presumption in favor of the first-filed action where, as here, two identical actions are concurrently pending in two federal courts, *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *overruled on other grounds by Wilton*, 515 U.S. 277, exceptions to this rule "are not rare, and are made when justice or expediency requires. . ." *Id.* at 937-938. The preference for the first-filed action can be overcome where "there are special circumstances. . . ." *Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc.*, 249 F.Supp.2d 12, 16 (D. Mass 2002). One such "special circumstance" is "the filing of a suit for the sole purpose of winning the race to the courthouse to secure a preferred forum." *Id.*

This Court has held that the filing of an action seeking declarations of non-infringement and invalidity of a patent while the parties are still exploring non-judicial resolutions of their dispute constitutes just such a "special circumstance" justifying departure from the first-filed rule. In *Davox Corp. v. Digital Systems Int'l*, 846 F. Supp. 144 (D. Mass. 1993), patentee Digital Systems ("DSI") had sent letters to Davox Corp. stating that a product sold by Davox appeared to fall within the scope of the claims of one of DSI's patents. Davox responded by informing DSI that it had forwarded these letters to its patent outside counsel, and that DSI would receive a

response from that firm. Instead of providing such a response, however, Davox filed suit in this Court. DSI then filed suit in the Western District of Washington, and moved to dismiss the Massachusetts action.

This Court granted the motion to dismiss. Although the Court found that there was a justiciable controversy between the parties at the time Davox filed suit, it exercised its discretion not to exercise jurisdiction over the plaintiff's declaratory relief claim. The Court noted that, by preemptively filing suit, Davox had foreclosed various possible non-judicial resolutions of the parties' dispute, including: (i) Davox's convincing DSI that its products did not infringe; (ii) negotiations over a license agreement for the patented technology; or (iii) other non-judicial alternatives. 846 F. Supp. at 148.

Quoting another case involving a premature declaratory relief claim, the Court emphasized the strong policy favoring non-judicial resolution of disputes:

> [A]s federal court calendars become increasingly burdened, attorneys should exercise a correspondingly increased responsibility to attempt to resolve disputes without using limited judicial resources to decide issues which might, by responsible discussions between reasonable people, be settled out of court. Potential plaintiffs should be encouraged to attempt settlement discussions (in good faith and with dispatch) prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to institute litigation in a district of its own choosing. . . .

*Id.* at 148 (*quoting Columbia Pictures Industries, Inc. v. Schneider*, 435 F.Supp. 742, 747 (S.D.N.Y. 1977)); *see also American Needle and Novelty Co. v. Schuessler Knitting Mills, Inc.*, 379 F.2d 376, 379 (7th Cir. 1967) ("The owner of a patent should have the privilege of making a fair investigation as to the possible infringement of his patent without calling down on his head the undertaking of an expensive and burdensome declaratory judgment suit. . . ."). The Court found dismissal of the case before it justified on the ground that it would be "inappropriate to reward – and indeed abet – conduct which is inconsistent with the sound policy of promoting extrajudicial dispute resolution, and conservation of judicial resources." *Id.* at 148.

The *Davox* reasoning was extended to a case factually even closer to this case in *Kleinerman v. Luxtron Corp.*, 107 F. Supp.2d 122 (D. Mass 2000). In *Kleinerman*, the parties had entered into a license agreement for Luxtron to use Kleinerman's patented technology. A dispute subsequently arose as to whether Luxtron had reported all sales covered by the licensing agreement. For eight months, the parties attempted to settle the dispute, during which time Kleinerman occasionally threatened to sue Luxtron. On July 29, 1999, and unbeknownst to Kleinerman, Luxtron filed a declaratory relief action in the Northern District of California. The following day, Kleinerman declared the negotiations to be "at an impasse," *id.* at 123, and two weeks later filed an action in Massachusetts Superior Court, alleging breach of contract and other claims. After removing the action to federal court, Luxtron moved to stay, dismiss or transfer the case to the Northern District of California based on its earlier-filed suit.

This Court declined to dismiss the second-filed action in this Court, finding that "special circumstances" justified departure from the "first-filed" rule. Citing *Davox*, the Court began by acknowledging the general rule that a later-filed case may be permitted to proceed where the first-filed action results from a "race to the courthouse." *Id.* at 124. The Court noted, however, that this precise fact pattern did not fit the case before it, as Luxtron, rather than racing to the courthouse at the earliest opportunity, as the plaintiff had in *Davox*, had negotiated in good faith with Kleinerman for several months before bringing suit.

Nonetheless, the Court found "special circumstances" justifying disregard for the first-filed rule in Luxtron's decision to "pounce preemptively just before Kleinerman notified it of the perceived 'impasse' and as soon as Luxtron realized that litigation was inevitable." *Id.* at 124. Noting that patent owners are legally required to place infringers on notice of infringement through a "cease and desist" letter, the Court observed the basic unfairness where such communications regularly lead to "the filing of an action for declaratory judgment in a foreign locale to the detriment of the patentee." 107 F. Supp.2d at 124; *see also Factors, Etc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir. 1978) ("When the declaratory judgment action has been triggered by a notice letter, this equitable consideration may be a factor in the decision to allow

the later filed action to proceed to judgment in the plaintiffs' chosen forum"). In order to avoid such prejudice to the patent owner's rights, the Court articulated the following general rule:

> This Court is persuaded that in patent infringement cases, where 1) the patentee notifies an alleged infringer of suspected infringement, 2) good faith negotiations ensue and 3) the alleged infringer then files a declaratory judgment action in another forum, a subsequently-filed action by the patentee in the nature of patent infringement filed within a reasonable time after the first action is entitled to some deference and . . . the 'first-filed' rule will not be dispositive.

107 F.Supp.2d at 124-25. Finding that the patentee's choice of forum was worthy of deference, the Court then declined to transfer or dismiss the patentee's second-filed suit against Luxtron based on the earlier action in California. *Compare Holmes Group*, 249 F.Supp.2d at 16 (acknowledging *Kleinerman* as stating the applicable rule for patent cases, but finding rule inapplicable where accused infringer, rather than engaging in licensing discussions with patentee, merely denied liability and immediately filed declaratory relief action).

This case presents an even stronger argument for disregarding the "first-filed' rule than *Kleinerman*. As noted above, BD filed its declaratory relief claim within five days of sending a letter to TheraSense stating that it intended to accept one of TheraSense's prior [Redacted] licensing proposals, and prior to TheraSense's letter responding to that proposal. Indeed, BD filed suit the same day TheraSense confirmed that it was still interested in negotiating a license.

The case law of courts in this District is consistent with the governing appellate authority.[3] The Federal Circuit, citing *Davox*, has recognized that a court properly can decline

---

[3] Because the issue of subject matter jurisdiction over a patent dispute is intimately related to patent law, it is governed by Federal Circuit law. *Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1365-66 (Fed. Cir. 2001) (Federal Circuit precedent applies "to both substantive and procedural issues 'intimately involved in the substance of enforcement of the patent right.'") (*quoting Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 857 (Fed. Cir. 1999)); *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 878 (Fed. Cir 1983) (in finding that Federal Circuit has jurisdiction to decide matters of jurisdiction over patent disputes, Court observed that "[n]othing can be more fundamental to the patent field than the question of when patent validity may be litigated in a federal forum.").

the exercise of declaratory relief jurisdiction where a party brings a declaratory relief action in the middle of ongoing licensing discussions. The Court

> agreed [with the *Davox* court] that a court may take into account the pendency of serious negotiations to sell or license a patent in determining to exercise jurisdiction over a declaratory judgment action. While a court may conclude that ongoing negotiations do not negate the presence of a controversy for jurisdictional purposes, the court may nonetheless find, in deciding whether to hear the declaratory judgment action, that the need for judicial relief is not as compelling as in cases in which there is no real prospect of a non-judicial resolution of the dispute.

89 F.3d at 814. *Norand* involved a factual situation much like that in this case. As the Federal Circuit noted, "EMC and Norand were involved in negotiations over the sale or licensing of Norand's patents up to the time the complaint was filed." *Id.* at 815. Moreover, Norand, the patentee, was still participating in good faith negotiations at the time suit was filed. *Id.* ("there is no suggestion in any of the evidence proffered by EMC that Norand's participation in the negotiations was merely a pretext designed to give Norand a basis for keeping EMC from obtaining declaratory judgment relief."). Based on these circumstances, the Court held that it was appropriate for the district court to decline to exercise jurisdiction.

Similarly here, this action is a classic case of an accused infringer prematurely filing a declaratory relief claim in order to secure its own choice of forum at the expense of the patentee's preferred forum in the event licensing discussions fail. As this Court recognized in *Davox* and *Kleinerman*, the appropriate result is for the Court to decline to exercise subject matter jurisdiction over BD's claims, and dismiss the present action in favor of TheraSense's infringement suit in its chosen forum.

### C. Transfer Is Also Justified Under 28 U.S.C. § 1404(a) Because The Balance Of Convenience Favors Suit In California.

As noted above, the fact that BD filed a preemptive suit is itself sufficient to justify dismissal of this action in favor of TheraSense's suit in the Northern District of California. However, additional grounds exist for granting the present motion.

Federal law provides that

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

Thus, another recognized exception to the first-filed rule is where the balance of convenience militates in favor of transferring the claims asserted in the first action to the second-filed forum. The factors relevant to determining whether one forum is more convenient than another include: 1) the plaintiff's choice of forum; 2) the convenience of the parties; 3) the convenience of witnesses and the location of documents; 4) any connection between the forum and the issues; 5) the law to be applied; and 6) the state or public interest at stake. *Kleinerman*, 107 F.Supp.2d at 125. These factors here argue strongly for litigating the present action in Northern California.

1.   **Choice of Forum**

BD is a New Jersey corporation. Complaint, ¶ 1. The plaintiff's choice of forum is accorded far less deference where, as here, the plaintiff files suit in other than its home forum. *Ahlstrom v. Clarent Corp.*, 2002 WL 31856386 *4 (D.Minn. 2002) ("[plaintiffs'] choice of forum is accorded much less deference when it is not the forum in which they reside"); *Alpha International, Inc. v. T-Reproductions, Inc.*, 2003 WL 21511957 *5 (S.D.N.Y. 2003) (where "the plaintiff is a nonresident and the operative facts bear little connection to the chosen forum, plaintiff's choice is shown less deference."); *compare Homes Group*, 249 F. Supp.2d at 17 (where a plaintiff chooses its *home forum*, such a choice usually represents considerations of convenience rather than harassment of the defendant). Thus, even where there no extenuating circumstances, BD's choice of a Massachusetts forum would be entitled to little deference.

Even more fundamentally, however, as noted above, where a party accused of patent infringement files a declaratory relief suit against the patentee to secure its choice of forum, the presumption in favor of the plaintiff's choice of forum evaporates entirely, and instead gives way to judicial deference to the *patentee's* choice of forum for its infringement suit. *Kleinerman*, 107 F. Supp.2d at 124-25. Accordingly, the choice of forum factor here favors dismissal or transfer.

2.   **Convenience Of The Parties**

The Northern District of California is a much more convenient forum than Massachusetts for TheraSense, which is headquartered in Alameda, California. BD, a New Jersey company, is headquartered in neither California nor Massachusetts, and its diabetes care business unit is headquartered in New Jersey. *See* Decl. of Ted G. Dane, ¶ 3. Although BD's complaint refers to BD's having business operations in Massachusetts, BD has a substantial presence in the Northern District of California as well. One of BD's three business divisions, its Biosciences Division, is headquartered in San Jose, California. *See* Dane Decl., ¶ 2. Two of the four business units of the Biosciences Division are also headquartered in the Northern District of California. *Id.* Accordingly, the convenience factor for BD is at best neutral as between the two forums, but a

California forum is much more convenient for TheraSense. Taken as a whole, therefore, the convenience of the parties factor favors the Northern District of California over Massachusetts.

### 3. Convenience Of The Witnesses And Location Of Documents

This case will focus on TheraSense's patents and BD's accused products. Information relating to TheraSense's patents is located in California, where the company is headquartered. Silverman Decl., ¶ 27. The vast majority of the inventors and other witnesses likely to have knowledge of facts relevant to TheraSense's claims also reside in California. *Id.*, ¶¶ 27-28. Moreover, the parties' face-to-face licensing negotiations, which could be relevant to the issue of willfulness, occurred in northern California. *Id.*, ¶ 18 and Exhibits Q and R thereto.

BD is a New Jersey company, with operations in both Massachusetts and California. Complaint, ¶ 1; Dane Decl., ¶ 2. Documents pertaining to BD's accused products, and witnesses with knowledge of such products, which are sold nationwide, likely are located throughout the country. Accordingly, the convenience of the witnesses and location of documents factor also favors a California forum.

### 4. Law To Be Applied

The law to be applied is federal patent law, so this factor does not argue for or against either jurisdiction.

### 5. Connection Between the Forum And The Issues/State Or Public Interest At Stake

California has a significant connection to the present action, as well as a substantial interest in protecting its citizens from the conduct giving rise to the litigation, as this action involves a California resident patent holder. BD is headquartered in neither Massachusetts nor California, but in New Jersey, and thus Massachusetts has a lesser connection to the present case. Therefore, this forum has less of an interest in the litigation than TheraSense's chosen forum of California.

In sum, not only is dismissal of this action justified under the general rule followed in this Court that a patentee will not be deprived of its choice of forum by a preemptive suit asserted by a patent licensee, but the other factors relevant to choice of forum also favor litigating this action

in California. Accordingly, the present action should be dismissed in favor of the California action.

### III. CONCLUSION

For the reasons stated herein, the Court should dismiss or stay the present action in favor of TheraSense's pending action in the Northern District of California, or alternatively, transfer the present action to the Northern District of California.

---

[4] Although Mr. Bengtsson left his position as Vice President of Intellectual Property of TheraSense in July 2003, he remained a consultant to Therasense, and, in that role, continued to serve as the primary contact with BD through year-end.

[5] That a controversy *now* exists as a result of BD's abandonment of the parties' licensing discussions cannot serve to "cure" the absence of such a controversy at the time it filed suit. *See GAF Bldg Materials Corp. v. Elk Corp.*, 90 F.3d 479, 483 (Fed. Cir. 1996) ("Later events may not create jurisdiction where none existed at the time of filing") (*quoting Spectronics Corp. v. H. B. Fuller Co.*, 940 F.2d 631, 635 (Fed. Cir. 1991)); *Int'l Med. Prosthetics Research Assocs., Inc. v. Gore Enter. Holdings, Inc.*, 787 F.2d 572, 575 (Fed. Cir. 1986) (declaratory judgment plaintiff must "establish that jurisdiction over its declaratory judgment action existed at, and has continued since, the time the complaint was filed.") (emphasis added).

[6] That a controversy *now* exists as a result of BD's abandonment of the parties' licensing discussions cannot serve to "cure" the absence of such a controversy at the time it filed suit. *See GAF Bldg Materials Corp. v. Elk Corp.*, 90 F.3d 479, 483 (Fed. Cir. 1996) ("Later events may not create jurisdiction where none existed at the time of filing") (*quoting Spectronics Corp. v. H. B. Fuller Co.*, 940 F.2d 631, 635 (Fed. Cir. 1991)); *Int'l Med. Prosthetics Research Assocs., Inc. v. Gore Enter. Holdings, Inc.*, 787 F.2d 572, 575 (Fed. Cir. 1986) (declaratory judgment plaintiff must "establish that jurisdiction over its declaratory judgment action existed at, and has continued since, the time the complaint was filed.") (emphasis added).

[7] Because the issue of subject matter jurisdiction over a patent dispute is intimately related to patent law, it is governed by Federal Circuit law. *Flex Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1365-66 (Fed. Cir. 2001) (Federal Circuit precedent applies "to both substantive and procedural issues 'intimately involved in the substance of enforcement of the patent right.'") (*quoting Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 857 (Fed. Cir. 1999)); *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 878 (Fed. Cir. 1983) (in finding that Federal Circuit has jurisdiction to decide matters of jurisdiction over patent disputes, Court observed that "[n]othing can be more fundamental to the patent field than the question of when patent validity may be litigated in a federal forum.").

Respectfully submitted,

THERASENSE, INC.
By its attorneys,

/s/ Ted Dane

Ted Dane (*admitted pro hac vice*)
Jeffrey I. Weinberger (*admitted pro hac vice*)
Munger, Tolles & Olson LLP
355 South Grand Avenue
Los Angeles, California
213-683-9100

Of Counsel:

Daniel L. Goldberg, BBO# 197380
Joshua M. Dalton, BBO# 636402
Bingham McCutchen LLP
150 Federal Street
Boston, MA   02110
617-951-8000

Dated: June, 1 2004

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

I, Matthew L. Mitchell, hereby certify that counsel for TheraSense has contacted Plaintiff's counsel in an effort to resolve or narrow the issues presented in this motion.

/s/ Matthew L. Mitchell

Matthew L. Mitchell

## CERTIFICATE OF SERVICE

I, Matthew L. Mitchell, hereby certify that a true copy of the foregoing was served on Plaintiff's counsel by first-class mail, postage prepaid, on or about June 1, 2004.

Matthew L. Mitchell