IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BECTON, DICKINSON AND COMPANY<br><br>       Plaintiff,<br><br>   vs.<br><br>THERASENSE INC.,<br><br>       Defendant. | CIVIL ACTION NO. 04-10574 (JLT) |

**DEFENDANT THERASENSE'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS, STAY OR TRANSFER ACTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1), 28 U.S.C. § 2201(a) AND 28 U.SC. § 1404(a)**

## I.    INTRODUCTION

BD's Opposition to TheraSense's Motion To Dismiss, Stay or Transfer this action is primarily notable for those facts that BD does not dispute. Specifically, BD does not dispute that:

- Courts in this jurisdiction, recognizing the public interest in promoting extra-judicial resolution of legal disputes, have been unreceptive to declaratory relief claims filed by potential patent licensees in the midst of ongoing licensing discussions.

- TheraSense and BD engaged in good faith licensing negotiations for several months prior to the filing of this action.

- At the time BD filed this action, neither party had informed the other that it considered there to be an impasse in the negotiations.

- BD filed this action based on its own subjective perception that the licensing negotiations had stalemated and thus litigation was inevitable, rather than on any statement or threat by TheraSense.

For the reasons stated in TheraSense's Opening Brief, the foregoing undisputed facts are those that Massachusetts federal courts have held to be insufficient to support the filing of a declaratory judgment action. Accordingly, this action should be dismissed.

With regard to TheraSense's motion in the alternative to transfer this action to California, BD again does not dispute that: (i) California is a more convenient forum for the inventors of the patents in suit, the only witnesses specifically identified by the parties in their papers; and (ii) California is the domicile of one of the two parties BD named in its action, while Massachusetts is the domicile of neither. Accordingly, a section 1404 analysis leads to the same conclusion – this case should be litigated in California.

## II.    ARGUMENT

### A.    The Parties' Licensing Negotiations Did Not "Break Down" In March 2004.

BD predicates its opposition to TheraSense's motion almost entirely on a single factual

contention: *i.e.*, that the licensing negotiations between the parties had *already* broken down by

the time it filed this action, and therefore this Court should not depart from the normal rule that,

where the parties have both filed lawsuits against one another, the first filed action should take

precedence. BD's factual contention does not hold up to scrutiny, however, and thus BD's entire

argument in support of the Court's exercising jurisdiction over this action falls away.

BD's description of the parties' negotiating history suggests that the parties were

progressing down a clear path toward an identified licensing relationship all the way up through

March 2004, when TheraSense offered terms constituting "a complete break" from their previous

discussions. In fact, the record reflects that the parties' negotiations were not nearly so linear,

but rather constantly evolved up through BD's premature filing of the present suit.

As BD notes, in late July 2003, TheraSense offered BD two [REDACTED]    licensing

proposals, designated Option 1 and Option 2. Contrary to BD's suggestion, however, these

options did not remain available throughout the entirety of the parties' discussions. Therasense's

Patrick Bengtsson made this point crystal clear to BD's outside counsel Wayne Kennard in late

October 2003, after three months had passed with no BD response to these proposals:

> TheraSense has decided that it will withdraw its currently proposed
> terms on November 20. We therefore invite BD to respond to
> those terms immediately. If TheraSense and BD can reach
> agreement by November 20, and have a final, signed license by
> mid-December, TheraSense will license BD on the terms it has
> proposed, including any reasonable variations proposed by BD.
>
> If the companies have not reached agreement by November 20,
> TheraSense will continue to offer a license to BD. However, BD
> can expect that any such license will be available on terms that are
> more commercially and legally appropriate to the circumstances,

*i.e.*, which are significantly greater that TheraSense's current proposals.

Exh. N to Declaration of Carl Silverman in support of TheraSense's Motion to Dismiss, Stay or Transfer Action Pursuant To Federal Rule of Civil Procedure 12(b)(1), 28 U.S.C. § 2201(a) or 28 U.S.C. § 1404(a) ("Silverman Decl.").

In his declaration in support of BD's Opposition Brief, BD counsel Wayne Kennard avers that, on November 18, 2004, two days before the November 20, 2003 deadline, he and Mr. Bengtsson agreed to set up a December meeting of the parties to discuss a possible [REDACTED] licensing proposal, *as well as* [REDACTED] licensing Options 1 and 2. Declaration of Wayne M. Kennard, Esq., ¶ 13. The letters written the day after this discussion, however, make quite clear that the parties understood that Options 1 and 2 would be "off the table" if not accepted by the November 20 deadline. In his letter dated November 19, 2003, Mr. Kennard referenced the previous day's discussion with Mr. Bengtsson without mentioning [REDACTED] licensing Options 1 or 2. Instead, Mr. Kennard emphasized:

> Becton Dickinson . . . believes that there may be an opportunity for TheraSense and Becton Dickinson to work together in a *licensing arrangement* with respect to TheraSense' patented and future patented 1 μL technology. The

> [REDACTED]

> The new President of the Becton Dickinson division responsible for the technology at issue proposes that if TheraSense is interested in moving ahead *along these lines*, a time should be set in December for the business people from each company to meet to work out a framework of *such licensing arrangement*.

Exh. O to Silverman Decl. (emphasis added). Mr. Bengtsson's response later that day reminded Mr. Kennard that "TheraSense's current [REDACTED] license terms will 'come off the table' at

the end of business tomorrow, the 20th, as previously indicated." Exh. P to Silverman Decl. (emphasis added)

BD does not dispute that it did not accept TheraSense's [REDACTED] licensing proposal by the November 20, 2003 deadline. The consequence of BD's failing to do so is that Options 1 and 2 expired by their terms. Thus, although TheraSense ultimately did agree to meet with BD on December 19, 2003, the [REDACTED] licensing offers were no longer available for acceptance by the time of the meeting.[1]

Consistent with BD's focus at the December 19, 2003 meeting on a [REDACTED] relationship, TheraSense prepared and forwarded a term sheet for such a license four days later. More than a month later, however, on February 3, 2004, BD suddenly switched gears, indicating that it no longer wished to negotiate the [REDACTED] arrangement it admitted having itself "proposed . . . at the meeting on December 18[sic], 2003," and instead wished to base further negotiations on former [REDACTED] licensing Option 2. Exh. S to Silverman Decl.

By this time, as noted, this alternative was no longer open to BD – Option 2 had expired. In a March 10, 2004 letter, Mr. Silverman – who had recently replaced Mr. Bengtsson as TheraSense's Vice President of Intellectual Property – informed BD that TheraSense, consistent with Mr. Bengtsson's earlier warnings, no longer was willing to offer BD a license under the [REDACTED] licensing proposals it had previously proposed.

---

[1] BD's President of Diabetes Care, William Marshall, states in his declaration that, at the end of the December 19 meeting, he communicated his interest in pursuing a [REDACTED] license "along the lines of the previously-discussed . [REDACTED] options" if the parties could not agree upon the [REDACTED] arrangement, and that TheraSense's CEO, Mark Lortz, "said nothing to the contrary." Declaration of William R. Marshall, ¶ 4. Mr. Lortz's mere silence, of course, would not serve to re-open options that by their terms had already expired. Moreover, notwithstanding the expiration of these [REDACTED] options, TheraSense ultimately was in fact agreeable to continued discussions "along the lines" of these proposals, as evidence by Mr. Silverman's subsequent offering of a license predicated on the principal terms of Option 1.

Mr. Silverman's March 10 letter proposed a new term sheet outlining a . [REDACTED] proposal similar to that described in the earlier Option 1, but which (i) provided Abbott, soon to be TheraSense's parent, with the option to be a party to the license; and (ii)

[REDACTED]

In support of its critical contention that negotiations had "broken down" by the time it filed this suit one week later, BD now describes these terms as "a complete break" from the parties' previous discussions. Opp. Brief at 6. This characterization, however, does not fit the facts.

Abbott's inclusion as a potential party to the license was an obvious and natural consequence of the fact that Abbott had entered into an agreement to acquire Therasense since the parties last exchanged licensing terms. Reply Declaration of Carl Silverman ("Silverman Reply Decl."), ¶ 3. The [REDACTED] provision was equally sensible and foreseeable.

[REDACTED]

In any event, Mr. Silverman indicated that

TheraSense was willing to discuss any of the terms contained in the term sheet. Silverman Reply Decl., ¶5 & Exh. T to [Original] Silverman Decl.

[REDACTED]

Rather than respond to Mr. Silverman's new version of the former Option 1 proposal, however, BD instead again requested the expired Option 2. When Mr. Kennard called Mr. Silverman a few days later to discuss this request, Mr. Silverman explained that TheraSense needed more time to prepare its response, but would do so shortly. Silverman Decl., ¶ 23. Not only did Mr. Silverman not threaten suit, he confirmed that BD remained interested in resolving the parties' dispute amicably through a license arrangement. *Id.*; Silverman Reply Decl., ¶ 6. BD nonetheless filed this suit that same day.

Meanwhile, Mr. Silverman, believing that the parties were still actively involved in negotiations and unaware of BD's having filed suit, sent Mr. Kennard a letter the following day, asking BD to provide a specific response to the terms of TheraSense's most recent counterproposal. Only thereafter did Mr. Silverman and TheraSense learn that BD had abandoned licensing discussions and commenced litigation.

## III.  ARGUMENT

### A.  TheraSense's Conduct Did Not Indicate That Litigation Was Inevitable, Or Even Likely, Had BD Not Forced The Issue By Filing This Suit.

As the foregoing discussion of the parties' negotiations reflects, TheraSense's conduct throughout the entirety of the licensing discussions – including the time period after Mr. Silverman took over negotiations – was consistent with its efforts to explore an extra-judicial resolution to this matter.

In arguing otherwise, BD puts enormous weight on a single alleged comment by Mr. Silverman. According to Mr. Kennard, when Mr. Silverman indicated that Therasense was not interested in pursuing further the former Option 2 [REDACTED] · licensing proposal, he responded by saying that he would have to protect his client's rights, at which point Mr. Silverman stated, "Well, you've got to do what you've got to do." Opp. Brief at 6.  BD characterizes Mr. Silverman's comment as "essentially [an] admi[ssion] that litigation was likely, if not inevitable. . . ." *Id.* at 9.[2]

On its face, Mr. Silverman's comment does not support such a contention.  First, Mr. Silverman's comment merely stated a truism – namely, that Mr. Kennard obviously could take whatever action he felt he needed to take, and TheraSense could not control what he did.  Such an innocuous statement in no way suggested that *TheraSense* intended to sue BD.

The innocuous nature of Mr. Silverman's comment can readily be illustrated by considering what he might have said, but did not.  Mr. Silverman did *not* threaten Mr. Kennard with a lawsuit.  Silverman Reply Decl., ¶ 6.  Nor did he say that, in light of Mr. Kennard's comments, he considered further licensing discussions to be fruitless.  *Id.*, ¶ 6.  Mr. Kennard

---

[2] Mr. Kennard states in his declaration that he "interpreted" Mr. Silverman's comments to suggest that litigation was inevitable.  Mr. Kennard did not, however, share his interpretation with Mr. Silverman during their discussion.  Silverman Reply Decl., ¶ 7.

does not allege that Mr. Silverman made any comment about *TheraSense's* intentions. At most, Mr. Silverman merely recognized that Mr. Kennard had indicated that *BD* might take some action to "protect" its rights. *Id.*, ¶ 6. Moreover, Mr. Silverman emphasized that TheraSense still hoped the parties could resolve the matter amicably. Silverman Decl., ¶ 23; Silverman Reply Decl., ¶ 6.

Declaratory relief jurisdiction is justified only by a threat that the declaratory relief defendant may sue the plaintiff, not the other way around. *BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed. Cir. 1998) (The element of threat or reasonable apprehension of suit turns on the conduct *of the patentee.* . .")(emphasis added); *Dr. Reddy's Labs, Inc. v. Pfizer*, 2003 WL 21638254, at \*5 (D.N.J. 2003) (court "may only find an actual controversy based upon the objective actions of the patentee, not the subjective impressions of the plaintiff"). Thus, BD cannot manufacture a proper basis for bringing suit based on *its own* vague statement that it would do whatever it needed to do to protect its interests. When BD filed this action, the parties were still involved in active negotiations, which, contrary to BD's assertions, neither party had "broken off." Such facts do not suffice to support the filing of a declaratory relief claim.

## B.   BD Largely Ignores The Law Of Both The Federal Circuit And This Court Concerning Jurisdiction Over Declaratory Relief Claims Asserted By Potential Patent Licensees.

In its Opposition Brief, BD spends little to no time discussing the most important decisions in the area of declaratory jurisdiction – a Federal Circuit decision and a decision of this Court establishing the appropriate rule to apply in patent cases.

As TheraSense noted in its Opening Brief, the Federal Circuit has held that exceptions to the first-filed rule "are not rare, and are made when justice or expediency requires. . ." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937-38 (Fed. Cir. 1993), *overruled on other*

*grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). One such exception is where the declaratory relief plaintiff files suit in the midst of ongoing patent licensing negotiations.

Thus, as noted in TheraSense's Opening Brief, the Federal Circuit affirmed dismissal of a declaratory relief claim in *EMC Corp. v. Norand Corp.*, 89 F.3d 807 (Fed. Cir. 1996), where, as here, the parties had been "involved in [licensing] negotiations . . . up to the time the complaint was filed," *id.* at 815, noting that "a court may take into account the pendency of serious negotiations to sell or license a patent in determining to exercise jurisdiction over a declaratory judgment action," *id.* at 814.

As TheraSense also noted in its Opening Brief, the case in this jurisdiction with facts closest to the present one is *Kleinerman v. Luxtron Corp.*, 107 F. Supp.2d 122 (D. Mass 2000). The parties to that action, like TheraSense and BD here, spent eight months attempting to settle their dispute. Then, when the parties reached an impasse in their negotiations, and "as soon as *Luxtron* realized that litigation was inevitable" it "pounce[d] preemptively" by filing a lawsuit "just before [the patentee] notified it of the perceived 'impasse.'" *Id.* at 124.

The Court found that exercising jurisdiction over the declaratory relief claim under such facts would improperly encourage parties to file suit solely to deprive a patent holder of its chosen choice of forum. Declining to do so, the Court dismissed the action. The Court also announced the following general rule for future patent declaratory relief cases:

> This Court is persuaded that in patent infringement cases, where 1) the patentee notifies an alleged infringer of suspected infringement, 2) good faith negotiations ensue and 3) the alleged infringer then files a declaratory judgment action in another forum, a subsequently-filed action by the patentee in the nature of patent infringement filed within a reasonable time after the first action is entitled to some deference and . . . the 'first-filed' rule will not be dispositive.

107 F.Supp.2d at 124-25.

1021674.2                                          -10-

The facts here argue even more strongly against allowing BD's declaratory relief claim to proceed than the facts in *Kleinerman*. In the latter case, both parties appear to have recognized that negotiations had stalemated by the time the declaratory relief plaintiff brought suit, as evidenced by the patentee filing suit one day after the accused infringer. Here, in contrast, BD, without an objectively reasonable basis, came to such a conclusion unilaterally, and without bothering to inform TheraSense that it no longer wished to pursue extra-judicial remedies. Thus, at the same time BD was commencing this action, Mr. Silverman was writing correspondence to BD in furtherance of what he understood to be ongoing negotiations. Silverman Reply Decl., ¶ 7. Accordingly, for the same reasons articulated by the Court in *Kleinerman*, this Court should not allow BD's preemptive action to proceed.

### C.    The Cases From Other Jurisdictions On Which BD Relies Are Inapposite And Do Not Suggest A Basis For Departing From *Norand* or *Kleinerman*.

The cases cited in BD's Opposition Brief – most of which are district court decisions from other jurisdictions – do not suggest a different result than that indicated by *Kleinerman* and *Norand*.

BD cites *Tactical Software v. Digi International, Inc.*, 2003 WL 22401783 (D.N.H. 2003), and *Russell Corp. v. Sara Lee Corp. LLC*, 129 F. Supp.2d 1165 (N.D. Ill. 2001), to suggest that it could have had an objectively reasonable apprehension of suit notwithstanding the parties' ongoing licensing discussions. As shown below, the facts of both of these cases are clearly distinguishable from those in the present case.

First, although the court in *Tactical Software* characterized the parties' pre-filing conduct as licensing "negotiations," this was a rather generous view of the nature of their interaction. The facts in *Tactical Software* were as follows: the patentee had engaged in a pattern of targeting an alleged infringer, filing suit, settling the action, and then starting the process all over

again with a new infringer. *Id.*, *3 (describing prior litigation pattern involving two other alleged infringers). A few weeks before the declaratory relief plaintiff filed its suit, the patentee had written it an ominous letter indicating that it was the next target. After noting the successful conclusion of its other lawsuits, the patentee stated that "[n]ow that these litigations are resolved, we need to focus on the infringing activity of Tactical Software." *Id.* *4 (emphasis omitted).

Although the patentee's letter also indicated a willingness to discuss a license, the patentee did not actually propose any concrete license terms, and from the district court's opinion it appears that the patentee never in fact made any specific licensing proposal to the accused infringer. Rather than engage the patentee in substantive licensing discussions, the accused infringer filed suit.

Moreover, *Tactical* is a District of New Hampshire case. In *Davox Corp. v. Digital Systems Int'l*, 846 F. Supp. 144 (D. Mass. 1993), for many of the same reasons underlying the Court's decision in *Kleinerman*, this Court reached the opposite conclusion, finding jurisdiction to be improper where an accused infringer of a patent responded to a licensing proposal by filing a declaratory relief suit. The key point for purposes of the present motion, however, is that the *Tactical Software* plaintiff filed suit immediately upon receiving a licensing letter threatening suit, rather than during good faith licensing discussions between the parties, and is thus distinguishable from the facts here or in *Kleinerman* and *Norand*.[3]

---

[3] Similarly, neither *Reebok Int'l, Inc. v. Dunkadelic, Inc.*, 2004 WL 413266 (D. Mass. 2004), *Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc.*, 249 F. Supp.2d 12 (D. Mass. 2000), *Guthy-Renker Fitness, LLC v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264 (C.D. Cal. 1998), nor *Abbott Laboratories, Inc. v. Mead Johnson & Co.*, 1998 U.S. Dist. LEXIS 12317 (S.D. Ohio 1998) -- all of which BD cites in its Opposition Brief -- involved a situation where the declaratory relief plaintiff filed suit after the parties had engaged in licensing negotiations.

Of the cases cited by BD, only *Findwhat.com v. Overture Services, Inc.*, 2003 WL 402649 (S.D.N.Y. 2003), involved such a situation. *Findwhat*, however, is inapposite for two reasons. First, the court in that case failed to recognize that the plaintiff's objectively "reasonable apprehension" of suit must exist at the time it files its action, and thus the effect of an initial threat of litigation may be abated

Equally distinguishable are the facts of *Russell Corp. v. Sara Lee Corp. LLC*, 129 F. Supp.2d 1165 (N.D. Ill. 2001). Sara Lee accused Russell of selling products covered by its patents, and requested discussions about a possible licensing arrangement. Sara Lee also expressed concern that Russell had hired two former Sara Lee employees who had been privy to confidential information involving the patented technology, and demanded that Russell identify what steps it had taken to insulate these employees from development of its accused product.

Tellingly, the district court considered *none* of the foregoing acts sufficient to create a basis for a declaratory relief suit by Russell. However, in an October 2 meeting at the offices of Sara Lee's outside counsel, Sara Lee's attorney boasted of having made his living by trying "lots of these suits," "guaranteed" that he would "find at least one fact issue that would ensure that this litigation would go all the way to a trial before a jury," and indicated that a jury likely would award substantial damages against Russell. *Id.* at 1167. The court found this escalation of hostilities sufficient to convey to Russell a reasonable apprehension of suit.

In so ruling, however, the court made a point of noting that "[i]f Russell had filed suit prior to the October 2 meeting, the Court would not hesitate to agree with Sara Lee" [that it had taken no action creating a "reasonable apprehension" of suit]. *Id.* at 1168. It was only when Sara Lee's counsel "threw down the gauntlet" to Russell, advising it that "he was certain that the case would end up being tried to a jury and that substantial damages would be awarded," that a justiciable controversy arose. *Id.*

Around the time BD filed suit, of course, TheraSense had taken no actions remotely comparable to the conduct of Sara Lee's litigation counsel in *Russell*. Instead, the facts of this

where the parties then progress to good faith licensing negotiations. Second, the case arose in the Southern District of New York, which, unlike this Court, applies equitable exceptions to the first-filed rule sparingly, and grants a first-filed action precedence unless the plaintiff in the second-filed suit can demonstrate that forum shopping was the "sole reason" for the filing of the earlier action. *Id.* at *4.

case track those in *Kleinerman*, and the exercise of declaratory jurisdiction under such facts would be improper under this Court's precedent.

### D. TheraSense's Filing Of A Patent Infringement Suit *After* BD Broke Off Negotiations And Filed Suit Does Not Indicate That BD Was Entitled To Initiate Litigation While Licensing Negotiations Were Ongoing.

BD argues that the fact that TheraSense has now filed suit in California demonstrates that BD had a reasonable apprehension of suit at the time it filed this action. This is incorrect. A plaintiff's reasonable apprehension of suit must exist *at the time* it commences litigation. *See GAF Bldg Materials Corp.v. Elk Corp.*, 90 F.3d 479, 483 (Fed. Cir. 1996) ("Later events may not create jurisdiction where none existed at the time of filing") (*quoting Spectronics Corp. v. H. B. Fuller Co.*, 940 F.2d 631, 635 (Fed. Cir. 1991)).

At the time BD filed the present action, the parties still were actively engaged in licensing negotiations. In order to secure its own choice of forum, BD initiated this lawsuit without even first terminating those negotiations. As recognized in *Kleinerman* and the case law of the Federal Circuit, such conduct is inappropriate.

Once BD had abandoned any pretense of further negotiations and informed TheraSense that it had filed suit, a justiciable controversy obviously existed. It was only at that point – with negotiations no longer an option -- that TheraSense filed its own suit for patent infringement in California. The critical fact, however, is that, as in *Kleinerman* and *Norand*, at the time *this* action was filed, the parties were still exploring extra-judicial remedies, and BD was not entitled to file a lawsuit simply to secure its choice of forum.

### E. BD Does Not Rebut TheraSense's Showing That The Convenience Factors Favor Trying This Action In California.

With regard to the factors relevant to TheraSense's motion in the alternative to transfer venue, BD argues that four factors favor a Massachusetts forum: (i) the plaintiff's choice of

1021674.2                                    -14-

forum; (ii) the convenience of the parties; (iii) the convenience of witnesses and the location of documents; and (iv) the public interest. In fact, these factors argue in favor of a California forum.

### 1.    BD's Choice of Forum

BD insists that, even though Massachusetts is not its home forum, its choice of forum is entitled to considerable deference. The law is to the contrary.

A plaintiff's choice of forum is entitled to far less weight when it has not chosen the forum in which it resides. *See, e.g., Brown v. Dow Corning Corp.*, 1996 WL 257614, at *3 (S.D.N.Y. 1996) (plaintiff's choice of forum is accorded "little weight" "when a plaintiff brings suit outside his home forum"); *Reiffin v. Microsoft Corp.*, 104 F.Supp.2d 48, 52 (D.D.C. 2000) ("substantially less deference is warranted when the forum preferred by the plaintiff is not his home forum."); *Robomatix Int'l, Inc. v. Aluminum Co. of America*, 1993 U.S. Dist. LEXIS 7034, at *4 (S.D.N.Y. May 20, 1993) ("The weight given to the plaintiff's choice of forum is . . . diminished where the plaintiff brings suit outside his home forum."). Accordingly, BD's choice of forum here is entitled to little weight.

### 2.    Convenience Of The Parties

The convenience of the parties factor clearly favors California. One of the parties, Therasense, is a citizen of Northern California, and BD is a resident of Northern California, with the headquarters of one of its four business divisions being located there. BD's statement that "New Jersey is a very short flight from Boston and the federal courthouse," Opp. Brief at 13 n.4, does not detract from the fact that the only forum either party can claim as "home" is California, which argues in favor of the case proceeding in that jurisdiction.

1021674.2                                  -15-

### 3. Convenience Of The Witnesses And Location of Documents.

Finally, the convenience of witnesses factor favors California, not Massachusetts.[4]

TheraSense demonstrated that seven of the ten inventors of the patents in suit, two of whom are

no longer in TheraSense's employ, reside in California, and that none of them resides in

Massachusetts. Other than conclusorily asserting that relevant Nova witnesses may reside in

Massachusetts, BD identifies no particular witnesses with knowledge of facts relevant to this

action who reside in this forum. Accordingly, the record with regard to this factor also favors

litigating this action in California.

### 4. The Public Interest.

Lastly, BD argues that this Court should retain this action because its caseload is lighter

than that of the Northern District of California. As BD's own statistics reflect, however, in 2003,

the time from filing of an action through termination or trial was roughly the same for the two

forums. *See* Exhibit A to Opp. Brief. (showing median time of 10.7 months from filing of civil

action through disposition in Massachusetts, compared to 10.6 months to trial in Northern

California, and median time to trial of 28.5 months for Massachusetts, compared to 30.3 months

for the Northern District of California). Thus, concerns about docket congestion should not

affect the decision on this motion.

## IV.   CONCLUSION

For the reasons stated herein and in TheraSense' Opening Brief, the Court should dismiss

or stay the present action in favor of TheraSense's pending action in the Northern District of

California, or alternatively, transfer the present action to the Northern District of California.

---

[4] The convenience of witnesses is more important here than the physical location of documents. In contrast to tangible physical evidence such as the wreckage of a plane crash, location of documents is a relatively "minor consideration" in a venue analysis because "[d]ocuments may easily be sent by mail, copied or even faxed to a remote location." *Picker Intern., Inc. v. Travelers Indem. Co.*, 35 F.Supp.2d 570, 572 (N.D. Oh. 1998).

Respectfully submitted,

THERASENSE, INC.

By its attorneys,

_____

Ted Dane, admitted *pro hac vice*
Munger, Tolles & Olson LLP
355 South Grand Avenue
35th Floor
Los Angeles, California  90071-1560
(213) 683-9100

Daniel L. Goldberg, BBO #197380
Matthew L. Mitchell, BBO #647902
BINGHAM MCCUTCHEN LLP
150 Federal Street
Boston, MA  02110
(617) 951-8000

DATED: July 19, 2004

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel for each defendant via facsimile and by hand to Mr. Shannon and Ms. Pirozzolo this 19th day of July, 2004.

_____

Matthew L. Mitchell

# B

1    I, Carl Silverman, declare as follows:

2         1.    I make this reply declaration in support of Defendant TheraSense's

3   Motion to Dismiss, Stay or Transfer Action Pursuant To Federal Rule of Civil Procedure

4   12(b)(1), 28 U.S.C. § 2201(a) or 28 U.S.C. § 1404(a). Except as otherwise stated, the facts

5   contained herein are based upon my personal knowledge. If called as a witness in this action, I

6   could and would testify competently to such facts.

7         2.    I have worked in the intellectual property area for more than 30 years. For

8   17 years before coming to TheraSense I worked at Intel, where my responsibilities included

9   negotiating patent licenses. It has been my general practice to include cross-licensing provisions

10  in any patent license where one or more of the parties obtaining rights under the license has its

11  own patents on similar technology, and in my experience, such provisions are commonly

12  included in patent licenses.

13        3.    After assuming my position as Vice President of Intellectual Property at

14  TheraSense in March 2004, I prepared a March 10, 2004 term sheet (a copy of which is attached

15  as Exhibit T to my original declaration) offering BD a modification of what had previously been

16  designated by TheraSense as its Option 1 licensing proposal. In that term sheet, I included

17  provisions granting Abbott an option to be a party to the agreement, in recognition of the fact

18  that, following TheraSense's first offering of this proposal, Abbott had announced its plan to

19  acquire TheraSense.

                              **REDACTED**

20

21

22        4.    I did not indicate in my March 10 written proposal, or in any of my

23  subsequent discussions with Mr. Wayne Kennard, the BD representative with whom I

24  negotiated, that any of the terms that I had proposed were non-negotiable. To the contrary, in my

25  discussions with Mr. Kennard, and as reflected in my March 24 letter to him (a copy of which

26  was attached as Exhibit V to my original declaration), I indicated that TheraSense was willing to

27  consider any questions or considerations BD had with the terms I had proposed.

28        5.    I have reviewed the Declaration of Wayne M. Kennard, Esq. In Support of

1  Becton Dickinson's Opposition To TheraSense's Motion To Dismiss, Stay Or Transfer (Kennard

2  Decl."). I do not recall making the precise statement attributed to me by Mr. Kennard in his

3  declaration, although I do recall saying something along those lines to indicate that I recognized

4  that Mr. Kennard had said his client would act to protect its rights. During this same

5  conversation, I also reiterated to Mr. Kennard that TheraSense wished to resolve the matter

6  amicably, and suggested that BD consider and reply to TheraSense's forthcoming written

7  response to BD's last proposal. At no point in this conversation did I state or suggest that

8  TheraSense intended to file suit against BD.

9          6.      In Mr. Kennard's declaration, he states that he interpreted my comment

10 (which he recalls as being, "Well, you've got to do what you've got to do") to mean that

11 "negotiations had broken down, and that the parties would have to litigate their dispute."

12 Kennard Decl., ¶24. At no point in the conversation did I tell Mr. Kennard that I thought

13 negotiations had broken down or that litigation was necessary. Nor, during our conversation, did

14 Mr. Kennard tell me that he interpreted my comments to mean that negotiations had broken

15 down or that the parties would have to litigate their dispute. Accordingly, following my

16 discussion with Mr. Kennard, I understood that the parties would still engage in negotiations.

17
        I declare under penalty of perjury that the foregoing is true and correct under the
18
   laws of the United States, and that this declaration was executed at Alameda, California on this
19
   16th day of July, 2004.
20

21

22                                                    _____
                                                      Carl Silverman
23

24

25

26

27

28